UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                          CASE NO. 06-20366
   v.                                  JUDGE VICTORIA A. ROBERTS
                                          MAGISTRATE JUDGE PAUL KOMIVES

ANTHONY HACHEM, D-1,
DAVID EARL VARNER, D-2,
BRETT ANTHONY HANKE, D-3,
SARAH ADAMS, D-4,

       Defendants.

_____/

**REPORT AND RECOMMENDATION**

I.    <u>RECOMMENDATION</u>: The Court should deny defendant Adams's motion to dismiss the

indictment (docket #70).

II.    <u>REPORT</u>:

A.    *Procedural Background*

On July 12, 2006, the Grand Jury returned a four-count Indictment charging defendants with:

(1) conspiracy to possess with intent to distribute a controlled substance, to wit, five kilograms or

more of cocaine, 21 U.S.C. §§ 841(b)(1)(A), 846; (2) possession of a firearm in furtherance of a drug

trafficking crime, 18 U.S.C. § 924(c); (3) possession of a stolen firearm, 18 U.S.C. § 922(j); and (4)

possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Each defendant is named in

Counts I through III. Count IV names solely defendant Hachem.

The basic facts relevant to this motion were adduced at the preliminary examination. Briefly

stated, the government alleges that defendant Hanke proposed a robbery to an individual who turned

out to be a confidential informant (CI) for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  The CI informed his ATF handlers, who advised him not to participate in the robbery and to caution defendant Hanke against commission of the crime.  Under the direction of his ATF handlers, the CI proposed an alternative to defendant Hanke–a robbery of a drug stash house based on information from a friend of the CI, who was actually an undercover ATF agent.  Defendant Hanke agreed and met the undercover agent, who told Hanke that he was a drug courier who had access to a multiple kilograms of cocaine stored at a stash house.  Defendant Hanke agreed to the robbery, but was later incarcerated on an unrelated state charge.  Subsequently, the CI heard from defendant Varner, who told the CI that he knew of the planned robbery and wanted to participate.  Varner indicated that his cousin (an unindicted juvenile coconspirator) and defendant Hachem also wanted to participate in the robbery.  Varner and Hachem met with the undercover agent numerous times over the next several weeks to plan the robbery.  Defendant Hanke was released from prison during this time, and according to the government rejoined the conspiracy at that time.  Defendant Adams was also recruited during this time to be a driver.  On June 21, 2006, defendants, the CI, and Varner's cousin drove to the storage unit where the conspirators had agreed to meet the undercover agent to go to the stash house.  Upon their arrival at the storage unit, defendants were arrested.

On October 13, 2006, defendant Adams filed this motion to dismiss the indictment.  The other defendants have joined in defendant Adams's motion.  Defendants contend that the conduct of the government in this case was shocking and outrageous, and constitutes a denial of due process.  Defendants argue that the preliminary examination transcript shows beyond dispute that the drug house robbery plan was initiated, planned, and presented to defendants by government agents.  Defendants further argue that there was never any actual target house or victims to be robbed, or

drugs to be stolen.  Defendants argue that these facts warrant dismissal of Counts I and II on due process grounds.  The government filed a response on November 6, 2006.  The government argues that the facts alleged do not establish outrageous government conduct sufficient to warrant dismissal of the Indictment.

B.    *Analysis*

As a general matter, defendants may not challenge the sufficiency of the evidence through a pre-trial motion to dismiss the indictment.  As the Supreme Court has explained, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charges on the merits."  *Costello v. United States*, 350 U.S. 359, 363 (1956) (footnote omitted); *see also*, *United States v. Calandra*, 414 U.S. 338, 345 (1974) ("[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.").  In other words, "[w]hen a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial."  *United States v. Short*, 671 F.2d 178, 183 (6th Cir. 1982).  Nevertheless, under Rule 12 "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  FED. R. CRIM. P. 12(b)(2).  In particular, the outrageous government conduct defense asserted by defendants is a question of law for the court, and thus should be brought in a motion to dismiss under Rule 12(b)(2).  *See United States v. Nguyen*, 250 F.3d 643, 645-46 (8th Cir. 2001).

Under existing law, there are two species of entrapment–legal entrapment and outrageous conduct.  *See United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999).  Under the classic

3

entrapment defense, a defendant must establish both government inducement of the crime and a lack of predisposition to commit the crime. *See Mathews v. United States*, 485 U.S. 58, 63 (1988). The presence of the predisposition element renders the entrapment inquiry one for the jury, rarely amenable to resolution by a court as a matter of law. *See id*. Regardless of the defense they intend to raise at trial, defendants' motion to dismiss is not based on the legal entrapment defense.

Rather, defendants' motion is based on the outrageous conduct defense suggested by the Supreme Court in *United States v. Russell*, 411 U.S. 423 (1973). In that case, the Court rejected a defendant's entrapment defense which was based solely on the government's conduct, explaining that the entrapment defense focuses instead on the defendant's predisposition to commit the offense. *See id*. at 431. In dicta, however, the Court suggested that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *Id*. at 431-32. Subsequent case law calls into question whether this outrageous conduct defense, however, actually exists. The Supreme Court has never actually held that such a defense exists. Further, in *Hampton v. United States*, 425 U.S. 484 (1976), a four-Justice plurality opinion authored by then-Justice Rehnquist–who had also authored the Court's opinion in *Russell*–rejected such a defense outright. *See id*. at 489 (plurality op.). Justice Powell, concurring in the judgment, was not prepared to go so far in that case, but recognized an appropriate case might lead to the conclusion that the defense does not exist. *See id*. at 494 n.5 (Powell, J., concurring in the judgment). Likewise, although some Sixth Circuit cases suggest the existence of the defense, in at least two cases the Sixth Circuit appears to have rejected the defense outright. *See United States v. Mack*, 53 F.3d 126, 128 (6th Cir. 1995); *United States v. Tucker*, 28 F.3d 1420, 1426-28 (6th Cir. 1994). In light of this case

law, it is doubtful that a due process defense based on outrageous government conduct actually exists. *See United States v. Winddancer*, 435 F. Supp. 2d 687, 700 (M.D. Tenn. 2006).

Nevertheless, the Court need not resolve this issue because, even if the defense exists in the abstract, defendants have not established it on the facts adduced at the preliminary examination. Defendants' outrageous conduct defense is based on the government agents' (including the CI as a government agent) (a) inducement of and (b) significant involvement in the crime. However, the Sixth Circuit has explicitly rejected each of these governmental actions as bases for the outrageous conduct defense. *See United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (internal quotation omitted) ("We have held that the outrageous government conduct defense is not available where the defense is based either on a theory of government inducement, or on a theory that the undercover officer's involvement in creating the crime was so significant that criminal prosecution violates due process."); *Warrick*, 167 F.3d at 975 (agent's significant involvement in creating crime did not support outrageous conduct defense). Notably, the Eleventh Circuit has twice rejected the outrageous government conduct defense as applied to facts nearly identical to those present here. *See United States v. Paisley*, 178 Fed. Appx. 955, 961-62 (11th Cir. 2006); *United States v. Sanchez*, 138 F.3d 1410, 1413-14 (11th Cir. 1998).

In short, defendants' outrageous conduct defense is based on their arguments that the government agents induced and were significantly involved in the crime. Even assuming that an outrageous government conduct defense exists, these arguments are insufficient to state such a defense under governing Sixth Circuit law. Accordingly, the Court should deny defendants' motion to dismiss.

C.      *Conclusion*

5

In view of the foregoing, the Court should deny defendants' motion to dismiss Counts I and II of the Indictment.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/26/07

6

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on January 26, 2007.

s/Eddrey Butts
Case Manager